

FILED

AUG 2 3 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GOLD STRIKE HEIGHTS<br>HOMEOWNERS ASSOCIATION,<br><br>       Debtor.<br>_____ | Case No. 15-90811-E-7 |
| DON LEE,<br><br>       Plaintiff,<br><br>v.<br><br>GOLD STRIKE HEIGHTS<br>ASSOCIATION, a California corporation;<br>et al.,<br><br>       Defendants.<br>_____ | Adv. Proc. No. 15-9062<br>Docket Control No. NB-2 |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

## MEMORANDUM OPINION AND DECISION
### [Motion for Attorneys' Fees]

Gary Farrar, the Defendant-Trustee ("Defendant-Trustee") in this Adversary Proceeding, has

filed a Motion for an Award of Prevailing Party Attorneys' Fees in the amount of $11,236.00[1]

---

[1]     The Motion for Prevailing Party Attorneys' Fees requests fees totaling $9,736.00
through the filing of the motion and an additional amount of $1,500.00 for replying to the
anticipated opposition and oral argument on this Motion.

against Don Lee, the Plaintiff ("Plaintiff").  This court entered judgment in this Adversary Proceeding for Defendant-Trustee on May 26, 2016. Dckt. 47.[2]  This Motion was properly noticed pursuant to Local Bankruptcy Rule 9014-1, and a timely opposition was filed by Plaintiff.  After oral argument on August 4, 2016, the court took this Motion under submission and issues this Memorandum Opinion and Decision thereon.  This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law.

The court grants the Motion and awards Gary Farrar, the Defendant-Trustee, $11,236.00 in prevailing party attorneys' fees against Don Lee, the Plaintiff.

## SUMMARY OF THIS ADVERSARY PROCEEDING

On March 20, 2015, Plaintiff commenced suit in the California Superior Court challenging the non-judicial foreclosure sale of real property commonly known as 145 Jasper Way, San Andreas, California (the "Property") conducted by either, or both, Gold Strike Heights Association ("Gold Strike 2002") and Gold Strikes Heights Homeowners Association ("Gold Strike 2007").  Plaintiff denominated three causes of action in the Complaint: First Cause of Action for Declaratory Relief, Second Cause of Action for Negligent Infliction of Emotional Distress, and Third Cause of Action for Intentional Infliction of Emotional Distress.  Exhibit A, Dckt. 5.  Into each cause of action the seventy-six paragraphs of General Allegations are incorporated and made part of the grounds upon which such relief for each of the three Causes of Action are demanded.

After the commencement of the Chapter 7 bankruptcy case by Gold Strike 2007, the Defendant-Trustee removed the Complaint to this Bankruptcy Court, which action is now this Adversary Proceeding.  On March 3, 2016, the Defendant-Trustee filed a Motion for Judgment on the Pleadings, asserting that Plaintiff did not have standing to file the action. Motion, Dckt. 23.  The Motion states that it is based on the Notice of Motion, the Memorandum of Points and Authorities, and the complete records and files in this Adversary Proceeding.  In the Points and Authorities, Defendant-Trustee expands the simple one-line Motion to state that because Plaintiff does not have

---

[2]    On June 8, 2016, Plaintiff filed a Notice of Appeal of the judgment.  This court determines this post-judgment award of attorneys' fees is not "part of the merits of the action" on appeal and is a separate matter for the court from which a separate appeal would be required. *United States of America et al v. RB& B Contractors, Inc. et al*, 21 F.3d 952, 954 (9th Cir. 1994).

any interest in the Property that was the subject of the foreclosure sale, Plaintiff does not have the basis for any claim against the bankruptcy estate (as the successor to the Debtor against whom such claims would be asserted).

Plaintiff responded, opposing the Motion, asserting that Gold Strike 2002 and Gold Strike 2007 are separate and distinct entities, and have not been merged into one entity. Further, because Gold Strike 2002 and Gold Strike 2007 are separate and distinct entities that have not been merged and because Gold Strike 2002 corporate powers had been suspended, no lawful foreclosure could have been conducted by either Gold Strike 2002 or Gold Strike 2007. Thus, Plaintiff argues that Gold Strike 2007 could not have obtained an interest in the Property. Plaintiff then argues that any rents that may be owed by Plaintiff as a tenant of the Property should be paid to the creditor having a deed of trust against the Property. Finally, Plaintiff asserts in response to the Motion that he is entitled to a ninety-day notice before he is evicted. Opposition, Dckt. 29.[3]

On May 26, 2016, the court entered a judgment in favor of Defendant-Trustee on all claims in the Complaint and against Plaintiff, with no relief or recovery on any and all claims in the Complaint awarded Don Lee. Dckt. 47. The order also required that motions for attorneys' fees be filed and served on or before June 15, 2016. The present Motion was filed and served on June 15, 2016. Motion and Certificate of Service, Dckts. 60 and 66.

In granting the relief, the court expressly ordered that Plaintiff could elect to file a stipulation or *ex parte* motion (if a stipulation could not be reached) to dismiss this Adversary Proceeding. Order, Dckt. 42. Additionally, the court afforded Plaintiff the opportunity to file a motion for leave to file an amended complaint. *Id.* In Adversary Proceedings where there are pleading challenges and acrimonious litigation, this court has found that by having a party file a motion for leave to file an amended complaint, with a copy of the proposed amended complaint attached, the court flushes out intentionally poor pleading practices or abusive defense motion to strike practices. Though afforded the opportunity, Plaintiff failed to file either a stipulation or an *ex parte* motion to dismiss, or a motion for leave to file an amended complaint in the thirty-day period allowed by the court from

[3] The Opposition also asserts that the Complaint could be amended by Plaintiff if necessary. Opposition, p. 8:9-10.

3

the issuance of the Order granting the Motion for Judgment on the Pleadings.

## REVIEW OF MOTION FOR ATTORNEYS' FEES AND OPPOSITION

The Defendant-Trustee asserts that pursuant to Federal Rule of Bankruptcy Procedure 7054 and California Civil Code § 5975 the Defendant-Trustee is entitled to attorneys' fees on the grounds that he prevailed in Plaintiff's action asserted in the Complaint, which the Defendant-Trustee contends relates to the enforcement of rights and interests pursuant to the Covenants, Restrictions, and other documents by which the homeowners associations named as defendants in the Complaint operate the "Governing Documents."[4]

Defendant-Trustee provides a task billing analysis and supporting evidence for the services provided, which are described in the following main categories.

A.  "Removal: Defendant-Trustee spent 2.7 hours in this category. The fees in this category include reviewing the Complaint filed in state court, correspondence regarding removal of the case to Bankruptcy Court, research and strategy sessions regarding removal of the case to Bankruptcy Court, drafting the notices to remove and other pleadings filed in support of removal of the case."

B.  "Status Conferences and Misc. Case Issues: Defendant-Trustee spent 2.2 hours in this category. The fees include compliance with the order to confer and attendance at status conferences."

C.  "Judgment on the Pleadings: Defendant-Trustee spent 19 hours in this category. The fees in this category include correspondence regarding Defendant-Trustee's motion for judgment on the pleadings, research and strategy sessions regarding Defendant-Trustee's motion for judgment on the pleadings, drafting the motion for judgment on the pleadings and other pleadings in support of the motion, preparing for, travel to, and appearing at the hearing."

D.  "Motion for Attorneys' Fees: Defendant-Trustee spent 15 hours in this category. The fees in this category include correspondence regarding Defendant-Trustee's Motion for Attorneys' fees, research and strategy, drafting the motion and exhibits. The Defendant-Trustee estimates it will incur approximately $1,500.00 in attorneys' fees to litigate this motion, which it anticipates will include preparing for, travel to, and appearing at the hearing on the Motion and filing any additional pleadings."

The fees requested are computed by Defendant-Trustee multiplying the time expended providing the services multiplied by an hourly billing rate for the person providing the service. The persons providing the services, the time for which compensation is requested, and the hourly rates

---

[4]  As discussed *infra*, such Governing Documents are statutorily defined and the basis for a statutory award of attorneys' fees.

4

are:

| Names of Professionals and Experience | Time | Hourly Rate | Total Fees Computed Based on Time and Hourly Rate |
|---|---|---|---|
| C. Stevens (2015) | 1.2 | $335.00 | $402.00 |
| C. Stevens (2016) | 8.1 | $340.00 | $2,754.00 |
| J. Hunsucker (2016) | 28.6 | $225.00 | $6,435.00 |
| K. Abdallah (paralegal) (2016) | 1 | $145.00 | $145.00 |
| Additional Fees in Connection to Responding to Opposition (if any) and Oral Argument (if necessary) | 0 | $0.00 | $1,500.00 |
| | 0 | $0.00 | $0.00 |
| | 0 | $0.00 | $0.00 |
| Total Fees for Period of Application | | | $11,236.00 |

**Plaintiff's Opposition**

The Plaintiff filed an opposition to this Motion for Prevailing Party Attorneys' Fees. Dckt. 75. The Plaintiff asserts that the Defendant-Trustee's Motion is inadequate and not properly supported by evidence. Plaintiff objects to the complaint presented as Exhibit "A," asserting that it is the complaint in another adversary proceeding between Plaintiff and Defendant-Trustee. The court addresses this objection to the exhibit below.

Plaintiff contends that Defendant-Trustee fails to establish what specific Governing Documents are the subject of enforcement in this Adversary Proceeding, and therefore attorneys' fees cannot be based on such Governing Documents. Plaintiff further asserts that Defendant-Trustee changes his position from alleging that the Plaintiff has no standing, for which the judgment was granted, and instead now seeks to treat the Judgment as having been determined on the Governing Documents – not merely on the lack of standing. The Plaintiff asserts that Defendant-Trustee is attempting to allege claims on behalf of Gold Strike 2002, which is not the Debtor, in order to create an award of fees for the bankruptcy estate of Debtor Gold Strike 2007. Finally, Plaintiff contends that Defendant-Trustee is attempting to enforce the rights of a suspended corporation, Gold Strike 2002.

5

The Defendant-Trustee filed a response on July 28, 2016 (Dckt. 79) contending that the basis for having prevailed in this Adversary Proceeding on the Motion for Judgment on the Pleadings against Plaintiff is not the determinative factor in whether Defendant-Trustee is entitled to prevailing party attorneys' fees. Defendant-Trustee argues that an action to enforce the Governing Documents does not need to be adjudicated on its merits for the prevailing party to be entitled to reasonable attorneys' fees.  Defendant-Trustee argues that the Complaint filed by Plaintiff asserts that Gold Strike 2002 and Gold Strike 2007 do not have the right to exercise and did not exercise the rights and powers arising under the Governing Documents.  Further, Defendant-Trustee asserts that Plaintiff contends that Gold Strike 2007 purports to have conducted a non-judicial foreclosure, based on rights and powers under the Governing Documents, without any authority under the Governing Documents.

## RULING

As with many things regarding the law, resolution of this dispute is neither as black nor as white as the respective parties assert.  Here, the court focuses on the actual Complaint filed by Plaintiff, not only the prayer, but each cause of action and the allegations (including the general allegations incorporated into each cause of action) upon which Plaintiff seeks determinations so as to prevail on the Complaint.

**Applicable Law**

The one thing the Parties agree on is that the only basis asserted for the requested attorneys' fees is California Civil Code § 5975,[5] which states:

§ 5975.  Enforcement of governing documents

(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.

(b) A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association.

---

[5]  Cal. Civ. Code § 5975 continues former Cal. Civ. Code § 1354 without change.

1    (c) In an action to enforce the governing documents, the prevailing party shall be
2    awarded reasonable attorneys' fees and costs.

3    "The mandatory attorney's fees and costs award under section [5975], applies when a
4    plaintiff brings an action to enforce such governing documents, but is unsuccessful because he or
5    she does not have standing to do so." *Martin v. Bridgeport Cmty. Ass'n, Inc.*, 173 Cal. App. 4th
6    1024, 1039 (2009) (citing *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal. App. 4th
7    1007, 1014 (2006). The law is clear that whether attorneys' fees may be allowed pursuant to the
8    statute is not dependent on a determination of dispute concerning the Governing Documents but that
9    it was put at issue in the action.

10   **Computation of Prevailing Party Attorneys' Fees**

11        Unless authorized by statute or contractual provision, attorneys' fees ordinarily are not
12   recoverable as costs. Cal. Code Civ. Proc. § 1021; *International Industries, Inc. v. Olen*, 21 Cal. 3d
13   218, 221 (Cal. 1978). The prevailing party must establish that a contractual provision exists for
14   attorneys' fees and that the fees requested are within the scope of that contractual provision. *Genis*
15   *v. Krasne*, 47 Cal. 2d 241 (1956). In the Ninth Circuit, the customary method for determining the
16   reasonableness of a professional's fees is the "lodestar" calculation. *Morales v. City of San Rafael*,
17   96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is
18   calculated by multiplying the number of hours the prevailing party reasonably expended on the
19   litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363 (citation omitted). "This calculation
20   provides an objective basis on which to make an initial estimate of the value of a lawyer's services."
21   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A compensation award based on the lodestar is a
22   presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

23        In rare or exceptional instances, if the court determines that the lodestar figure is
24   unreasonably low or high, it may adjust the figure upward or downward based on certain factors.
25   *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n.4 (9th Cir. 1987). Therefore, the
26   court has considerable discretion in determining the reasonableness of a professional's fees. *Gates*
27   *v. Duekmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Having this discretion is appropriate "in view
28   of the [court's] superior understanding of the litigation and the desirability of avoiding frequent

7

1  appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437.

2  **Discussion**

3       It is significant that Plaintiff believed, presumably in good faith, that he was entitled to
4  attorneys' fees for prosecuting this litigation. The Second and Third Causes of Action for Negligent
5  and Intentional Infliction of Emotional Distress tort claims could not be the basis for attorneys' fees
6  for litigating the Complaint. Thus, the Plaintiff must believe the issues in the First Cause of Action
7  are ones in which a right to attorneys' fees exist.

8       At the hearing, Plaintiff argued that while the fees were requested in the prayer, the prayer
9  is mere boilerplate language and of no significance, as this was a state court complaint, not one filed
10 in federal court. The court does not view it as such, and presumably Plaintiff would have a good
11 faith basis for claiming attorneys' fees to make such a demand for attorneys' fees as part of the
12 prayer. However, such assumption does not control, and the moving party must show, and the court
13 must find, that proper grounds exist for attorneys' fees. The Defendant-Trustee cannot prevail on
14 a claim for attorneys' fees based solely on Plaintiff improperly asserting the right to attorneys' fees.

15      Plaintiff argues that the statutory attorneys' fees provision upon which the Defendant-Trustee
16 states his claim, California Civil Code § 5975, is not applicable because this Adversary Proceeding
17 does not relate to the enforcement of the covenants and restrictions in the Governing Documents.
18 Rather, from the Plaintiff's perspective as of this Motion, the Complaint sought, and the judgment
19 so granted, the ruling on a contention that Plaintiff asserted that Gold Strike 2002's corporate powers
20 were suspended by the Franchise Tax Board. Therefore, as a matter of general corporate and tax law,
21 Gold Strike 2002 could not conduct a foreclosure sale. Thus, Plaintiff argues that the Complaint did
22 not relate to the enforcement of any Governing Documents.

23      The Defendant-Trustee disagrees, asserting that Plaintiff put at issue whether Gold Strike
24 2007 was the owner of the property and that a foreclosure sale had been properly conducted. In so
25 challenging Gold Strike 2007's conducting a foreclosure sale, Plaintiff put at issue the Governing
26 Documents and Gold Strike 2007's right to exercise those powers. Therefore, Defendant-Trustee
27 is the prevailing party and "**shall**" be awarded attorneys' fees pursuant to California Civil Code
28 § 5975.

**The Judgment for Defendant-Trustee and**
**The Court's Findings of Fact and Conclusion of Law**

At the hearing on the present Motion, much discussion ensued over the judgment granted by the court on the pleadings and the findings relating thereto. This discussion, and disagreement, between the Parties necessitates the court reviewing the Judgment and the court's findings and conclusions stated in the Civil Minutes for the hearing on the Motion for Judgment on the Pleadings.

The Judgment, filed on May 26, 2016, granted judgment for the Defendant-Trustee and against Plaintiff on all claims in the Complaint. Dckt. 47. The court's findings of fact and conclusions of law for granting the Defendant-Trustee's Motion for Judgment on the Pleadings are set forth in the court's Civil Minutes. Dckt. 39. Plaintiff's arguments focused extensively on what was characterized as the limited scope of the ruling, and therefore, no claim for attorneys' fees could be asserted by Defendant-Trustee.

The court's ruling on the Motion for Judgment on the Pleadings includes the following findings and conclusions:

A. Plaintiff asserts claims for declaratory relief, negligent infliction of emotional distress, and intentional and negligent infliction of emotional distress.

B. Plaintiff asserts that he is entitled to 90 days notice of termination of his tenancy, irrespective of who is the true owner of the real property commonly know as 145 Jasper Way, San Andreas, California ("Property").

C. Plaintiff asserts a right to possession of the Property pursuant to a lease that terminates on December 31, 2016.

D. Plaintiff asserts that the officers and board members of Gold Strike 2007 are grossly incompetent and negligent.

E. Plaintiff demands a declaration that the Debtor, Gold Strike 2007, and Gold Strike 2002 are separate and distinctive corporate entities and that they have not been merged either by official act or operation of law.[6]

---

[6]     In the prayer for relief, Plaintiff specifically requests:

"1) For a declaration that the 2002 and the 2007 Gold Strike corporation are now and have always been separate and distinctive corporate entities and that have not been merged either by official action or by operation of law,...."

Complaint, p. 24:4-6.

9

F.    For a determination that the asserted non-judicial foreclosure sales concluded by Gold Strike 2002 against the interests of Indian Village Estates, LLC was not valid because the rights and powers of Gold Strike 2002 had been suspended.

G.    For a determination that Gold Strike 2002 could not transfer its interest because its corporate powers had been suspended.

H.    Plaintiff sought to have the court adjudicate the rights and interests of Indian Village Estates (which is not a party to this litigation), a creditor having a deed of trust recorded against the Property (which is not a party to this litigation), and the bankruptcy estate (the successor to any rights and interests of the Debtor).

Civil Minutes, Dckt. 39.

In addressing the Plaintiff's attempt to challenge the non-judicial foreclosure sale and adjudicate the rights and interests of persons who are not parties to this litigation, this court addressed the basic constitutional and prudential standing requirements to litigate in federal court. *Id.*, Civil Minutes, p. 4.  The court further addressed in detail the proper grounds for seeking declaratory relief and the required elements for negligent and intentional infliction of emotional distress.

In ruling on the Motion for Judgment on the Pleadings, the court expressly considered Plaintiff's contention that there was a therefore undisclosed option to purchase the property that he may possess.  No such interest was asserted in the Complaint but was brought up only in opposition to that Motion.  The Exhibits for the two lease documents, one dated in 2008 and the other in 2011, are not copies of recorded documents.

As addressed by the court, Plaintiff asserting that he was a tenant in the Property by virtue of a lease with a third-party or that he purports to have an option from a third-party to purchase the Property from a third-party is not a sufficient basis for standing to litigate the ownership interests of the Property as between the Defendant-Trustee, the third-party, and an asserted non-party lien holder relating to the non-judicial foreclosure.  *Id.*

This court concluded that for the various claims asserted relating to the foreclosure, the rights and interests of other persons, Plaintiff did not have standing.  For the negligent and intentional infliction of emotional distress, the court details the failure of Plaintiff to plead, or argue in the opposition, sufficient minimum grounds for such a claim.  *Id.*, Civil Minutes, pp. 6-7.

///

10

**Ruling on Plaintiff's Objection to**
**Request for Judicial Notice**

In addition to the Opposition, Plaintiff filed an objection to the court taking "judicial notice" of the Complaint for Breach of Contract; Complaint for Challenge to HOA Election and its Results; and Complaint for Declaratory relief filed in the California Superior Court for the County of Calaveras (Exhibit A, Dckt. 65). Objection, Dckt. 77. This state court complaint, while removed to federal court, is the subject of another adversary proceeding involving the Plaintiff, Indian Village Estates, LLC (as co-plaintiff), and Defendant-Trustee (Adv. 15-9063). The objection states the conclusion that judicial notice is improper because the document is not "relevant." No reference to or analysis of the Federal Rules of Evidence or why Plaintiff's contention that the court taking judicial notice of a document in the court's own files (in another Adversary Proceeding) is not proper. Plaintiff does note that the complaint referenced in the Motion for Attorneys' Fees is a different one than attached as Exhibit A, specifically a complaint filed on March 20, 2016, which the Exhibit A filed is a complaint filed on August 24, 2015. The Complaint in this Adversary Proceeding is the one that is dated March 20, 2015, and signed by Plaintiff. Exhibit A, Dckt. 5. The filed stamp date on the Exhibit is unreadable, but it does not require much of a stretch to conclude that Defendant-Trustee attached the wrong Don Lee Plaintiff complaint as the Exhibit to this Motion. In considering this Motion, the court has reviewed the actual Complaint and issues raised therein in this Adversary Proceeding to determine what issues have been raised and claims asserted by Plaintiff.

A review of Federal Rule of Evidence 201 providing for judicial notice does not contain a provision stating that being "relevant" is a condition of taking judicial notice of a document. While that may be the basis for another type of objection, the court will not make that for either party.

However, Plaintiff takes exception to this Exhibit, which the court has not and does not consider in ruling on the present Motion. Therefore, the court sustains the Objection and excludes the Complaint from the related Adversary Proceeding from consideration of this Motion.

///

///

11

**Determination That Complaint Put At Issue**
**The Enforcement of the Governing Documents**

As discussed above, in an action relating to the enforcement of covenants and restrictions in a declaration for a common interest development, the prevailing party "**shall**" (not may) be awarded attorneys' fees. The court begins with the plain language of the state statute.[7] The right to attorneys' fees arises in an action to "enforce the governing documents." The term "governing documents" is defined in California Civil Code § 4150, which states,

> "§ 4150. 'Governing documents'
>
> 'Governing documents' means the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association."

For the attorneys' fees provision of California Civil Code § 5975, the court must find that Plaintiff's Complaint asserts a claim to "enforce the governing documents." The California Supreme Court in *Tract 19051 Homeowners Association v. Kemp*, 60 Cal. 4th 1135, 1144 (2015) [emphasis added] in applying the normal rules of statutory construction to California Civil Code § 5975 determined:

> Focusing on the plain language of former section 1354(c), we conclude that defendants have the stronger argument. When **a lawsuit is brought to enforce what the complaint expressly alleges are the governing documents of a common interest development**, the action would ordinarily be understood to be "an action to enforce the governing documents [of a common interest development]" as that clause is used in former section 1354(c). **Whether or not the plaintiff in the action is ultimately successful in establishing that the documents relied upon are in fact**

---

[7]    For determining state law, a federal court is bound by the decisions of the highest court of that state. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, and treatises. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F. 3d 958, 960 (9th Cir. 2001).

Under settled canons of statutory construction, in construing a statute, the California Supreme Court ascertains the usual and ordinary meaning of the words. *Kimmel v. Goland*, 51 Cal. 3d 202, 208 (Cal. 1990). The statute's plain meaning controls the court's interpretation unless the words are ambiguous. *Green v. State of California*, 42 Cal. 4th 254, 260 (Cal. 2007). When more than one statutory construction is arguably possible, the California Supreme Court selects the construction that comports most closely with the apparent legislative intent, with a view to promote rather than defeat the statutes' purpose. *Imperial Merchant Services, Inc. v. Hunt*, 47 Cal. 4th 381, 388 (Cal. 2009).

**the governing documents of a common interest development would not affect the character or type of action that has been brought**.

On a related note, consistent with the ruling in *Martin v. Bridgeport Community Association, Inc.*, *supra*, the Supreme Court puts a stake in the heart of Plaintiff's contention that if the court determines that he does not have standing, then there cannot be an award of attorneys' fees. The issue is whether the action was one in which the enforcement of the "governing documents" was put at issue.

In *Tract 19051 Homeowners Association*, the issue upon which attorneys' fees were properly awarded was whether the defendant was complying with the restrictions in the remodeling of his house. Other examples of actions brought to "enforce the governing documents" include the following:

A. *Harbor View Hills Community Association v. Torley*, 5 Cal. App. 4th 343 (1992): Action asserting that building an addition on the home violated the Covenants, Conditions, and Restrictions.

B. *Nahrstedt v. Lakeside Village Condominium Association*, 8 Cal. 4th 361 (1994): Action to enjoin homeowners association from enforcing a restriction against keeping cats, dogs, and other animals in the condominium development.

C. *Mount Olympus Property Owners Association v. Shpirt*, 59 Cal. App. 4th 885, 889 (1997), *reh'g denied* 60 Cal. App. 4th 792C (1979), *review denied*, 1998 Cal LEXIS 1338, at *1 (1998): Action filed to enforce the requirement under the CC&Rs that prior approval of proposed demolition and construction on the property was required.

D. *Parrott v. Mooring Townhomes Association, Inc.*, 112 Cal. App. 4th 873 (Cal. Ct. App. 2003), review denied, No. S120615, 2004 Cal. LEXIS 747, at *1 (2004): Action to declare invalid a vote approving special assessment by the homeowners association.

Claims and Issues Asserted in the Complaint
by Plaintiff

The court notes that this is a twenty-three page Complaint containing extensive and detailed pleadings. Plaintiff, though in *pro se*, demonstrates an extensive knowledge of the law and has repeatedly assured the court that he is up to the task of representing himself. This is not Plaintiff's only litigation in connection with the related bankruptcy case filed by Debtor, and he is actively litigating other adversary proceedings, has participated in most hearings before the court, and has tried to preemptively assert objections to the claim in derogation of the Chapter 7 Trustee's right and

1    power to evaluate and object to claims. 15-90811; Civil Minutes, Dckts. 111, 114, 124. In arguing

2    his objections to various claims of other creditors and a right to act in place of the Chapter 7 Trustee,

3    Plaintiff's arguments included advancing a theory under the recent Supreme Court decision in *Law*

4    *v. Siegel*, 134 S. Ct. 1188 (2014). Plaintiff has also fought to get the bankruptcy case dismissed and

5    the Defendant-Trustee out of administering assets of the Debtor as the Chapter 7 Trustee. In denying

6    the motion to dismiss, the court addressed some issues with respect to the positions taken by and the

7    litigation conduct of Plaintiff. 15-90811; Civil Minutes, Dckt. 94.

8         The Complaint, claims asserted therein, and allegations of conduct and misconduct set forth

9    by Plaintiff are not those of a novice. Plaintiff has demonstrated that he is an experienced litigant

10   and intentionally drafts pleadings to assert his allegations and contentions. He cites to law and

11   procedure. The Complaint, as pleaded, is not the result of a drafting or a "cut and paste" download

12   from the internet error by a less sophisticated consumer litigant.

13        While the Complaint has an extended, exhaustive (and relatively irrelevant) review of the

14   history of the infighting among the various members of the homeowners association and the disdain

15   Plaintiff has for members of the homeowners association and the Debtor, the relief sought stated in

16   the three denominated Causes of Action initially appears deceptively simple (if one looks only to the

17   three causes of action as to what is alleged and asserted by Plaintiff):

18        A.    Plaintiff sought damages for the torts of intentional and negligent infliction of
               emotional distress; and
19

20        B.    Plaintiff sought to litigate the ownership rights to the Property based on the asserted
               non-judicial foreclosure sale being invalid because Gold Strike 2002's corporate
               powers had been suspended by the State of California.
21

22   Complaint ¶¶ 77, 85, and 98; Dckt. 5.

23        However what is alleged in the general allegations, which are expressly incorporated into

24   each cause of action, are much broader.

25        These general allegations, as relevant to Plaintiff's contention that the estate's asserted

26   interests in the Property are defective,  in the twenty-three page Complaint (Dckt. 5) [emphasis

27   added] include the following:

28        A.    "36)  Under California law, an **HOA can only collect assessments from its**

14

**membership and thus compel their payment if certain acts are undertaken**, the most critical one being that the board of directors must meet and set the annual dues each year. If it fails to meet each year and set a new rate, the existing dues rate continues until changed." Complaint ¶ 36.

B.  "37) The **2002 HOA, the 'Gold Strike Heights Association', never set any rate for annual dues**. The **2007 HOA, the 'Gold Strike Heights Homeowners Association', has never set any rate for annual dues and lacks the right to do so.** The **governing documents filed by Frank Meager in 2002** did not set a rate for dues and no board of directors has ever done so." Complaint ¶ 37.

C.  "39) It appears that the **non-judicial foreclosure is based entirely upon a failure of Indian Village to pay monthly assessments on 31 lots based upon a monthly** rate of $84.00. However, such a rate was never set by the 2002 HOA nor the 2007 HOA. In fact, **no rate of any kind has ever been set by either HOA.**" Complaint ¶ 39.

D.  "40) **The 2002 HOA, the 'Gold Strike Heights Association'**, may have the right under the **2002 governing documents recorded** with the County of Calaveras to **set a monthly or annual rate for assessments but it never has. The 2007 HOA, the 'Gold Strike Heights Association', does not have the right to set such an assessment** and has never tried to do so." Complaint ¶ 40.

E.  "44)  However, because the **2007 HOA lacked any right to collect such assessments**, the foreclosure process was begun in 2013 under the name of Defendant GOLD STRIKE 2002 which may have had such rights at one time but could not legally exercise them as a suspended corporation." Complaint ¶ 44.

F.  "50) All notices and documents recorded with the Calaveras County Recorder in the years 2013 and 2014 and served upon Indian Village **in regard this assessment dispute and the subsequent illegal foreclosure action clearly** indicated that the foreclosing entity was the 'Gold Strike Heights Association' (Defendant GOLD STRIKE 2002) formed in 2002. It was only when the illegal foreclosure was finally completed in early 2015 with recording of a trustee's deed that ownership of 145 Jasper Way was illegally transferred into the 2007 corporate entity, the 'Gold Strike Heights Homeowners Association'." Complaint ¶ 50.

G.  "51  At all times when this foreclosure was carried out, the senior deeds of trust in existence on each of 31 lots, far exceeded the value of each lot by large margins. **Thus, there was no valid reason to take the foreclosure action initiated by the Defendant GOLD STRIKE 2007 except to strip Indian Village of its property and voting rights and thus pave the way for the Defendant to dissolve the HOA** and thus attempt to avoid all liability for their years of misconduct." Complaint ¶ 51.

H.  "59) On October 31,2014, Plaintiff LEE sent a letter to Mike Cooper in which LEE challenged the claim that the new owner of the property located at 145 Jasper Way was the 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007). **LEE told Cooper that the 'Gold Strike Heights Association' and the 'Gold Strike Heights Homeowners Association' were not the same entity and in fact were distinct and separate corporate entities and thus not interchangeable** as was contended by Mike Cooper. Attached as Exhibit 'O' to this complaint is a true and correct copy of this letter." Complaint ¶ 59.

I.  "73)  When 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007) contracted with 'Community Assessment Recovery Services' to start

15

the **non-judicial foreclosure process against Indian Village on the basis that Indian Village owed thousand of dollars in delinquent assessments, there was no possibility whatsoever of collecting any money from such a foreclosure proceeding as the senior liens on each of the properties far exceed the market value of any of the 31 lots.**" Complaint ¶ 73.

J.  "74  Thus, the **non-judicial foreclosure action orchestrated by 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007) was for purposes other than collecting any delinquent dues.**" Complaint ¶ 74.

K.  "75  As this non-judicial foreclosure applied to Indian Village Estates, **the actual purpose was to take way ownership of all the land owned by Indian Village Estates and thus take away any opposition by Indian Village to plans to dissolve Defendant** GOLD STRIKE 2007." Complaint ¶ 75.

L.  "86) Defendants **GOLD STRIKE 2002 and GOLD STRIKE 2007 never had the legal authority to foreclose, i.e., the authority to exercise the power of sale under California law to collect the alleged delinquent assessments,** resulting in the non-judicial foreclosure sale being void ab initio." Complaint ¶ 86.

M.  "88)  **None of the Defendants were ever a beneficiary or assignee of any beneficiary of any delinquent assessments recorded against the subject property**.  Accordingly, they wrongfully caused the recording or the Notice of Default, Notice of Trustee's Sale, and any Trustee's Deed Upon Sale against the subject property." Complaint ¶ 88.

N.  "99) **Defendants GOLD STRIKE 2002 and GOLD STRIKE 2007 never had the legal authority to** foreclose, i.e., the authority to exercise the power of sale under California law to **collect the alleged delinquent assessments,** resulting in the non-judicial foreclosure sale being void ab initio." Complaint ¶

O.  "101)  **None of the Defendants were ever a beneficiary** or assignee of any beneficiary **of any delinquent assessments** recorded against the subject property. Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale, and any Trustee's Deed Upon Sale against the subject property." Complaint ¶ 101.

P.  Prayer for Relief Paragraph 1: " For a declaration that the 2002 and the 2007 Gold Strike corporation are now and **have always been separate and distinctive corporate entities** and that have not been merged either by official action or by operation of law,...."

While stating in one part of the Complaint that the sales are invalid because of the corporate powers being suspended, and focusing just on that in opposing the Motion for Prevailing Party Attorneys' Fees, Plaintiff expressly puts at issue and sought to litigate, by incorporating as part of the grounds upon which the relief is based, that:

•   Gold Strike 2007 could not make assessments (which are rights arising under the Governing Documents);

•   No assessments were ever set by either Gold Strike 2002 or Gold Strike 2007 (which are issues arising under the Governing Documents);

- Gold Strike 2007 does not have the right to set assessments (which are rights arising under the Governing Documents);

- The non-judicial foreclosure is based on assessments that were not set by Gold Strike 2002 or Gold Strike 2007 (which are rights arising under the Governing Documents);

- The notices and documents relate to disputed assessments and subsequent illegal foreclosure based on such disputed assessments (which are rights arising under the Governing Documents);

- There was no valid reason for Gold Strike 2007 to conduct the non-judicial foreclosure actions (which are rights relating to the assessments which are asserted by Plaintiff not to be proper under the Governing Documents);

- The non-judicial foreclosure actions were taken to dissolve the homeowners association (which relates to the rights and powers of the homeowners association and relationship to the member arising under the Governing Documents);

- Gold Strike 2002 and Gold Strike 2007 were separate entities (and Gold Strike 2007 is not permitted to exercise the powers under the Governing Documents);

- The non-judicial foreclosure sale was based on asserted unpaid assessments (which Plaintiff asserts were not properly made under the Governing Documents);

- The non-judicial foreclosure sales were conducted by Gold Strike 2007 for purposes of then collecting delinquent dues (which are rights and powers arising under the Governing Documents);

- The purpose of the non-judicial foreclosure was to take ownership of the land away from Indian Village Estates, LLC, remove opposition (to the conduct of Gold Strike 2007 management under the Governing Documents), and dissolve the homeowners association.

- The action of Gold Strike 2007 was not for the purposes of collecting delinquent assessments (which are rights and powers arising under the Governing Documents);

- Gold Strike 2002 and Gold Strike 2007 never had the legal authority to foreclose (which are rights and powers arising under the Governing Documents);

- Gold Strike 2002 and Gold Strike 2007 were not beneficiaries of any delinquent assessment (which are rights arising under the Governing Documents);

- Gold Strike 2002 and Gold Strike 2007 did not have authority under California law to collect the alleged delinquent assessments (which are rights and powers arising under the Governing Documents); and

- Plaintiff requests that the court determine that Gold Strike 2002 and Gold Strike 2007 were and are separate legal entities (and thereby Gold Strike 2007 cannot exercise and enforce the rights and powers under the Governing Documents).

While Plaintiff now appears to assert that all of the general allegations that are incorporated into each cause of action and made a part of such three Causes of Action are mere "surplusage" and should be ignored, these are specific allegations, contentions, and issues for the court to determine

17

in ruling on the claims asserted by Plaintiff in the Complaint. As stated above, Plaintiff knows what he is doing (in his litigation) and intentionally advances arguments and claims. The court is convinced, having observed Plaintiff in multiple hearings and having heard many arguments from Plaintiff in this, the related adversary proceeding, contested matters, and generally in the bankruptcy case, that he intended to and did put at issue the Governing Documents and the exercise of the powers and rights therein by the Debtor and now the Defendant-Trustee.

Having put the exercise and enforcement of the Governing Documents at issue in this Adversary Proceeding, Plaintiff also put into play California Civil Code § 5975(c).

Therefore, the court determines that the provisions of California Civil Code § 5975(c) provides that attorneys' fees shall be awarded the prevailing party in this Adversary Proceeding, with Defendant-Trustee having been determined to be the prevailing party.

## DETERMINATION OF AMOUNT OF ATTORNEYS' FEES

The court having determined that the Defendant-Trustee is the prevailing party and that California Civil Code § 5975(c) provides that the prevailing party shall be awarded attorneys' fees, the court determines that the requested $11,236.00 in attorneys' fees is reasonable in this Adversary Proceeding. Applying the normal lodestar analysis, the court begins with the billing rates for the attorneys for which the attorneys' fees are requested. The hourly rates of $145.00 for a paralegal (limited to one hour billing), the $225.00 rate for the associate doing the bulk of the work, and the $335.00 and $340.00 an hour rate for the limited time billed for the partner (9.3 hours) are reasonable hourly rates. They are consistent with the rates in the community, as well as commensurate with the level of legal experience for the issues in this Adversary Proceeding.

The court further concludes that the time expended for the various legal services are reasonable. As a review of the file in this Adversary Proceeding, as well as the other Adversary Proceedings and the Bankruptcy Case itself, litigation between these parties is not an easy, courteous process. It is more akin to family law dissolution proceedings in state court rather than the normal federal court judicial experience.

There is no indication that the time spent was excessive or represents an over-billing of the file. Given the opposition, spending nineteen (19) hours on the Motion for Judgment on the

1  Pleadings (motion, response, and oral argument) is not unreasonable.  The next largest amount of

2  time relates to this Motion for Prevailing Party Fees.  Defendant-Trustee $3,559.50 (15.00 hours,

3  with 2.30 by the partner at $340.00/hour, 1.00 hour by the paralegal at $140.00/hour, and the balance

4  of 11.70 hours by the associate at $225.00/hour).[8]  These are the fees through the filing of the

5  Motion, and the Defendant-Trustee requests an additional $1,500.00 (which equals 6.66 additional

6  hours for the associate at $225.00/hour).  In reviewing the Opposition, Response, and the oral

7  argument, an additional 6.66 hours for the associate billing at a rate of $225.00 an hour.

8      The court allows and awards Defendant-Trustee $11,236.00 prevailing party attorneys' fees

9  against Plaintiff.

10  Dated: August  23  , 2016

12
13                    RONALD H. SARGIS, Chief Judge
                     United States Bankruptcy Court

27  [8]    The court refers to the billers as paralegal, associate, and partner not to dehumanize

28  the process, but for clarity as to the level of experience and professional status associated with
the time billed and billing rate.

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Don Lee<br>145 Jasper Way<br>San Andreas, CA 95249 | Joshua P. Hunsucker<br>Neumiller & Beardslee<br>P.O. Box 20<br>Stockton, CA 95201-2030 |